JOSEPH YACKLE

*v.*

MATILDA WIGHTMAN.

*Filed at Springfield March 28, 1882—Rehearing denied June Term, 1882.*

1. LIEN—*of a decree on land out of county.* Without the aid of the statute, a judgment or decree of the circuit court is a lien only upon lands within the county in which the judgment or decree was rendered, and the court has no power to make its decree a lien upon lands of the defendant in another county, merely by a provision therein to that effect, as against an innocent purchaser.

2. SAME—*how a decree or judgment may be made a lien in another county.* To make a judgment or decree rendered in one county, on change of venue, a lien, under the act of 1874, upon the defendant's real estate in the county where the suit was brought, a transcript thereof must be filed with the clerk of the circuit court of the latter county, and an entry of the same made in the judgment docket, after which such judgment or decree will have the same effect as if rendered in the court in which the suit was originally instituted. The recording of a copy of such decree in the book of the record of deeds, in pursuance of a direction in the decree, will not be regarded as a compliance with the statute, and will create no lien upon the defendant's lands as against an innocent purchaser for value.

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding.

This was a suit in ejectment, brought by Matilda Wightman, against Joseph Yackle, in the circuit court of Tazewell county, to the May term, 1881, to recover the possession of the north-east quarter of section 25, town 25 north, range 5 west of the third principal meridian, in Tazewell county, Illinois, wherein the plaintiff recovered, and the defendant appealed.

It was admitted, on the trial, that John Wightman was the owner in fee of the premises in controversy on June 16, 1858, and that both parties claimed from him as a common source of title. Appellee, Wightman, to recover in the action, relied upon a title she claimed to have derived by deed of

the premises from the master in chancery of Tazewell county to her, as the assignee of the purchaser of the same at a sale thereof made by such master under a decree rendered by the circuit court of Peoria county, Illinois, on March 22, 1859, in a suit for a divorce brought by her against her husband, said John Wightman. The sale was made by said master on November 22, 1879, upon the affidavit of Matilda Wightman presented to him, in which it was stated that eight semi-annual payments of alimony, of $250 each, for the years 1876, 1877, 1878 and 1879, due on the first days of January and July of each of said years, by the provisions of said decree, from John Wightman, were unpaid, and requesting the master to collect the same. At the sale one James Haines, Jr., bid off the premises in controversy, and another tract of eighty acres, all situated in Tazewell county, for $2327.10; and it is recited in the deed that Haines had assigned the certificate of sale from the master to Matilda Wightman, who, on February 26, 1881, received the master's deed purporting to convey to her the premises in controversy, and the eighty acres.

The suit for divorce was commenced June 16, 1858, in the circuit court of Tazewell county, by Matilda Wightman against John Wightman. The cause was taken, by change of venue, to the circuit court of Peoria county, and the latter court, on March 22, 1859, rendered a final decree. The decree provides that $500 per annum be allowed as alimony to the complainant, Matilda Wightman, in installments of $250 each, to be paid on the first day of January and first day of July, commencing January 1, 1860, and payable at the expiration of every six months thereafter during her natural life, the decree declaring that it was made a specific lien upon the premises in controversy and certain other described tracts of land, all in Tazewell county, and that in the event of the defendant failing to pay the complainant any part of said sum of money in the manner and at the

time mentioned in the decree, then the master in chancery of Tazewell county was ordered, on the application of the complainant, stating the fact of such failure by affidavit, to proceed to advertise and sell the tracts of land described in the decree, or any part thereof, to the highest bidder, for cash in hand, to raise the amount which might be then due the complainant as alimony, and to make sale in like manner, from time to time afterward, upon like default of payment.

· It was ordered that the decree be recorded in Tazewell county, and that from and after its rendition the defendant be enjoined from selling or conveying said lands, except subject to the lien thereby created upon the same. This decree, rendered March 22, 1859, was recorded March 24, 1859, in the book of deeds in the recorder's office of Tazewell county. The master's deed to Matilda Wightman, dated February 26, 1881, was recorded in such office February 28, 1881.

The defendant, to show right of possession in himself, introduced in evidence a warranty deed of conveyance of the premises in controversy, together with lot 6 and the east half of lot 10, in block 64, in Pekin, in this State, from John Wightman and wife to Job Newton, for the expressed consideration of $10,000, the deed being of the date of December 23, 1875, and recorded December 29, 1875, and introduced a lease of the premises from Newton to defendant.

The bill in said suit for divorce alleged that the defendant was the owner of the premises in controversy, and various other tracts of land in Tazewell county and other counties in the State, and prayed for a divorce and alimony. The court below instructed the jury that the Peoria county circuit court had the power to make the decree a specific lien on any land of the defendant, named in the bill, situated in Tazewell county, and that the decree, upon its rendition, became a lien upon the premises in controversy, and that the master's deed to plaintiff conveyed to her the fee simple title to the

premises, entitling her to them as against any grantee from John Wightman subsequent to the date of the decree.

Mr. N. W. GREEN, and Mr. WM. DON MAUS, for the appellant:

The lien of a decree for the payment of money for alimony was subject to the same restrictions, under section 14 of the Chancery Code of 1845, as judgments at law. *Eames et al.* v. *Germania Turnverein,* 74 Ill. 56.

A judgment was a lien only upon the lands of the defendant in the county where it was rendered, and not beyond. *Bustard* v. *Morrison,* 1 Scam. 236; *Durham* v. *Heaton,* 28 Ill. 264; *Kinney et al.* v. *Knoebel et al.* 51 id. 119; *Ewing et al.* v. *Ainsworth,* 53 id. 465; *Hart* v. *Wingart,* 83 id. 282.

The circuit court of Peoria county could not create a lien upon lands in Tazewell county by its decree, and except by issuing an execution, and making a levy and filing the same, such lands could not, under the law and decisions, be made subject to the lien of such decree. *Cornwell* v. *Watkins,* 71 Ill. 492; *Worcester National Bank* v. *Cheeney,* 87 id. 607.

Messrs. PRETTYMAN & SONS, for the appellee:

This case is not like a judgment or simple decree for the payment of money, and therefore the statutes and authorities referred to by appellant to show that the lien of a judgment or decree in a county is bounded by the county in which it is rendered, and can be made a lien in another county only by an execution levied there, has no application here.

Under the statute in force at the time this decree was rendered, the court was authorized to make its decree for alimony in a divorce suit a lien on the defendant's lands. Acts 1859, p. 28; Rev. Stat. 1874, p. 422, secs. 18, 20. See, also, *Wightman* v. *Wightman,* 45 Ill. 174.

The bill for divorce and alimony created a lien on the premises, and they became subject to the decree for all the

equities established by the decree, and a subsequent purchaser is affected by notice. *Vanzant* v. *Vanzant,* 23 Ill. 543.

The master's deed, where the decree is made a specific lien, relates back to the date of the decree, and becomes a superior title to all grants and conveyances of the defendant in the decree made after the date of the decree.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The plaintiff's claim of title is by master's deed, dated February 26, 1881, and the defendant's landlord's (Newton) claim of title is by deed dated December 23, 1875, and recorded December 29, 1875, a period of more than five years anterior to the date of plaintiff's deed. This fixes Newton's as the paramount title, unless at the time of the sale and conveyance from John Wightman to Newton, December 23, 1875, the premises were subject to the lien of the decree as against Newton.

In the case of *Sapp* v. *Wightman,* decided at the present term, (*ante,* p. 150,) a suit in ejectment, where the title to the other tract of eighty acres embraced in this same master's deed was involved, we considered the effect of this decree as being a lien upon these lands in Tazewell county, and determined that it was not a lien upon them; that the lien of a judgment or decree of the circuit court of a county is a lien only upon lands within its territorial jurisdiction, and no lien upon lands without the county in which such judgment or decree is rendered, and that the court had no power to make its decree a lien upon lands beyond the boundary of its territorial jurisdiction. That decision, however, was made without reference to the effect of the statute of 1874, which provides for filing the transcript of a judgment or decree, in a case where the venue has been changed, in the clerk's office of the county from which the change of venue was taken. The sale and conveyance from John Wightman, there, having

been in 1866, that case was not affected by this statute, passed afterwards, in 1874. But in the present case the sale and conveyance from Wightman was in 1875, after the passage of that statute, hence there is the additional question to be considered in the present case of the bearing of that statute.

The statute is: "Upon the entry of any judgment or decree in any civil case in which the venue has been changed, it shall be lawful for the party in whose favor the judgment or decree is rendered, to file in the office of the clerk of the court where the suit was instituted, a transcript of such judgment or decree, and said clerk shall enter the same in his judgment docket, and execution may issue thereon, and the same shall, from the filing of such transcript, have the same operation and effect as if originally rendered in such court." Rev. Stat. 1874, p. 1097, sec. 34. Without this statute, and the doing of what was therein prescribed, the decree could not be made a lien upon lands in Tazewell county as against an innocent purchaser for value.

But no step whatever was taken thereunder after the passage of the act. True, before the passage of the act, and soon after the rendition of the decree, in obedience to its express direction, the decree was recorded in the book of record of deeds in the recorder's office of Tazewell county. This was merely to comply with the decree. The law did not provide for the decree to be so recorded, and the recording of it affected nobody with notice of the decree. The records of the clerk's office and the judgment docket is where, under the law, intending purchasers of land are to look for judgments and decrees against it, not the records of the recorder's office. And, although the clerk of the circuit court is *ex officio* recorder of the county, this recording in 1859 can not be accepted as a substitute for, and to stand in the place of, the filing under the statute of 1874, of a transcript of the decree in the office of the clerk of the circuit court, and the

clerk's entry of the same in his judgment docket. Had the complainant in the divorce suit proceeded, under this statute of 1874, and filed a transcript of the decree in the clerk's office of the circuit court of Tazewell county, the clerk, as it was his duty to do, would have entered the same in his judgment docket, and this would have affected purchasers of the land with notice of the decree, and it would have been a valid lien upon the land, under that statute.

The requisite proceeding, then, not having been taken, under this statute of 1874, to give to the decree the same operation and effect as if originally rendered in the circuit court of Tazewell county, we find that there was no lien created upon the land under and by virtue of this statute of 1874, and hence, that the purchaser from John Wightman (Newton) took by his conveyance from Wightman the title in fee, unaffected by any lien of this decree of the Peoria county circuit court. It follows that the instructions to the jury were erroneous, and the judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCOTT dissenting.